**Laura McELROY, Individually and as Next Friend of John David McElroy, a Minor, Appellants,**

v.

**Duane B. FITTS, Appellee.**

**No. 08–93–00151–CV.**

Court of Appeals of Texas, El Paso.

April 7, 1994.

Rehearing Denied May 4, 1994.

---

Rick G. Strange, Cotton, Bledsoe, Tighe & Dawson, Midland, for appellants.

Steven L. Clack, Andrews, for appellee.

Before BARAJAS, C.J., and KOEHLER and LARSEN, JJ.

## OPINION ON MOTION FOR REHEARING

KOEHLER, Justice.

We withdraw our opinion of February 23, 1994 and substitute the following opinion in its place. Appellants' motion for rehearing is overruled.

This is an appeal from a judgment rendered for the plaintiff in an automobile accident case on a jury verdict that found the underage driver negligent and his mother both negligent and grossly negligent on a theory of negligent entrustment. The mother and her son assert in nine points that the trial court erred by allowing evidence of lost wages, by refusing to give a requested jury instruction, by submitting an improper question on gross negligence, by allowing the plaintiff to file a trial amendment, by entering a judgment for punitive damages and future medical expenses, neither of which were supported by sufficient evidence, and by awarding prejudgment interest on future damages. We modify the judgment as to actual damages and as modified, we affirm. As to part of the judgment awarding exemplary damages, we reverse and remand for a new trial.

### RELEVANT FACTS

Laura McElroy and her minor son, David McElroy, Appellants, live in Andrews, Texas. Approximately two months before the accident in question, Mrs. McElroy purchased a used pickup truck for David, who at the time of the accident was fifteen years of age and did not possess a driver's license. She obtained the pickup so that he could learn how to take care of it and would be encouraged to stay in school. Prior to the accident, David had not taken any driver's education course or training and had not obtained a driver's license. On two occasions in March 1992, David was given tickets for driving without a license. Mrs. McElroy paid the fines on the tickets. He was stopped by the police and warned not to drive without a license many more times.

On April 16, 1992, David was involved in the collision which is the basis of this suit. Two days before the accident, David and a friend had replaced the brake pads on the pickup. He admitted that immediately before the accident, he was traveling 45 to 50 m.p.h. on a street with a 30 m.p.h. speed limit and that as he approached an intersection with a stop sign, the brakes failed and he was unable to stop or slow the pickup appreciably. His pickup entered the intersection, colliding with a vehicle driven by Duane B. Fitts, Appellee. The police cited David for driving without a license and for operating a vehicle with defective equipment, and cited Mrs. McElroy for allowing her unlicensed child to drive.

Fitts' vehicle was extensively damaged. He complained of injuries to his neck and

was taken to a hospital. He was treated by his family physician, Dr. Gordon, approximately six times for cervical strain or whiplash and aggravation of pre-existing conditions.

In the suit and trial that followed, the jury found David negligent and his mother both negligent and grossly negligent. The court rendered judgment in accordance with the jury findings, awarding Fitts actual damages of $92,964.25 against both McElroys and exemplary damages against Mrs. McElroy in the amount of $50,000.

## EVIDENCE OF LOST WAGES

Under their first point of error, McElroys assert trial court error by allowing Fitts to introduce evidence of lost wages even though he had failed to produce this evidence during discovery, there being no showing or finding of good cause for late supplementation.

In his petition, Fitts alleged that he suffered physical impairment and had "been unable to attend to his occupation." In response to interrogatories requesting information relating to those allegations, Fitts replied that he was totally unable to work for two days and was then "only able to do office type work" at that time and that the total loss of earnings was "[u]nknown at this time." No supplementation to these answers was ever made. Over McElroys' objection, the trial court allowed Fitts to present lost earnings evidence without asking for a showing of, or finding, good cause. Based entirely on his testimony, the jury awarded Fitts $27,000 for past lost earnings [1] and $10,000 for future lost earnings.

The Texas Rules of Civil Procedure impose a duty to supplement not less than thirty days prior to the beginning of trial answers that are incorrect or incomplete when made, unless the trial court finds good cause for permitting later supplementation. TEX.R.CIV.P. 166b(6). Absent a finding of good cause, failure to supplement requires the exclusion of the evidence which the party was under a duty to provide. TEX.R.CIV.P. 215(5). Without a showing of good cause, the trial court has no discretion to admit testimony excluded by the rule. *Alvarado v. Farah Manufacturing Co., Inc.*, 830 S.W.2d 911, 914 (Tex.1992). *See also Southland Corp. v. Burnett*, 790 S.W.2d 828, 829–30 (Tex.App.—El Paso 1990, no writ). The trial court was without authority to admit evidence of lost earnings. Although Fitts argued that his tax returns for the past four years, which he had provided, were sufficient to show good cause, this information predated the accident and told his adversaries nothing about his lost earnings. *See City of San Antonio v. Fulcher*, 749 S.W.2d 217, 219–20 (Tex.App.—San Antonio 1988, writ denied) (Error to admit evidence of earnings beyond those indicated in discovery responses, including tax returns).

The error is reversible only if it is not harmless. *Gee v. Liberty Mutual Fire Insurance Co.*, 765 S.W.2d 394, 396 (Tex.1989). Because the jury findings on loss of earnings was entirely dependent on the testimony that should have been excluded, the trial court's error in admitting the evidence was not harmless. The first point is sustained.

## INSUFFICIENT JURY INSTRUCTIONS ON PUNITIVE DAMAGES

In Point of Error No. Two, the McElroys contend that the trial court erred by its refusal to instruct the jury on factors that it should consider when assessing punitive damages with the result that the jury was left with inadequate guidance and the McElroys were deprived of property without due process of law.

McElroys' requested exemplary damage instruction was as follows:

In answering this question, you are instructed that in considering the amount of money, if any, to award as exemplary damages, you may consider the following factors:

(1) the nature of the wrong;

(2) the character of the conduct involved;

---

1. Inexplicably, the judgment recited the sum of $20,000 as having been found by the jury for loss of earnings in the past but the total of the judgment for actual damages of $92,964.25 correctly included $27,000 found by the jury rather than $20,000.

(3) the degree of culpability of the wrong-doer;

(4) the situation and sensibilities of the parties concerned;

(5) the extent to which such conduct offends the public sense of justice and propriety;

(6) the frequency of the wrongful conduct; and

(7) the size of an award needed to deter similar wrongs in the future.[2]

The trial court refused to give the requested instruction and instead instructed:

'Exemplary damages' means an amount that you may in your discretion award as an example to others and as a penalty or by way of punishment, in addition to any amount that you may have found as actual damages.

McElroys contend that under the due process analysis of *Pacific Mutual Life Insurance Co. v. Haslip,* 499 U.S. 1, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991), the jury should have been given instructions to consider certain definite factors, such as the Kraus factors, which would have given it adequate guidance and would have placed some "reasonable constraint" limitation on its discretion in awarding punitive damages.[3] McElroys argue that such instructions would make post-trial review more meaningful because it would enable the appellate court to review the jury's punitive damage verdict "to determine if it falls within the discretion afforded them using the same factors and the same analysis that the jury was told to employ." Although we agree that it would be better practice for a trial court to give a jury Kraus factor instructions on exemplary damages, the instruction given in this case, identical to those suggested by the Pattern Jury

Charges of the State Bar of Texas, P.J.C. 7.06 (1991) and to those approved in such cases as *Texas Farmers Ins. Co. v. Soriano,* 844 S.W.2d 808, 828 (Tex.App.—San Antonio 1992, writ granted on other grounds), meets the "reasonable constraints" due process requirement. Although a number of appellate courts have approved of the giving of "Kraus factors" instructions in the trial court, none of the cases cited by McElroys[4] have gone so far as to hold the Pattern Jury Charge instruction erroneous as a denial of due process under *Haslip* or otherwise nor have we been able to find any such cases. However, when reviewing the legal and factual sufficiency of the evidence in support of an award of exemplary damages, the appellate court should consider the *Kraus* factors in determining whether those damages are reasonably proportioned to actual damages. *Kraus,* 616 S.W.2d at 910; *Haryanto v. Saeed,* 860 S.W.2d 913, 923 (Tex.App.—Houston [14th Dist.] 1993, no writ). The trial court did not err in refusing to give McElroys' requested instruction. The second point of error is overruled.

## SUBMISSION OF EXEMPLARY DAMAGE QUESTION

■ Under Point of Error No. Three, McElroys argue that it was improper for the trial court to submit a question asking if Mrs. McElroy was grossly negligent since the court did not require the jury to find that "she knew or should have known her son was incompetent or habitually reckless when she entrusted a vehicle to him." The argument is premised on Texas cases which have held that in order to recover punitive damages on a negligent entrustment theory, a plaintiff must submit proof not only that the owner of the vehicle: (1) entrusted it; (2) to an incom-

---

**2.** The first five factors, sometimes known as the Kraus factors, were first enunciated in *Alamo Nat'l Bank v. Kraus,* 616 S.W.2d 908, 910 (Tex. 1981) and *Wright v. Gifford–Hill & Co.,* 725 S.W.2d 712, 714 (Tex.1987), with the last two factors added by this Court in *State Farm Mutual Automobile Insurance Co. v. Zubiate,* 808 S.W.2d 590, 604 (Tex.App.—El Paso 1991, writ denied).

**3.** This Court in *Zubiate,* 808 S.W.2d at 604, affirmed with approval a trial court instruction that gave all seven of the Kraus factors, stating

that the due process rights of the appellant were well protected by the application of those factors.

**4.** *Nationwide Mutual Ins. Co. v. Crowe,* 857 S.W.2d 644 (Tex.App.—Houston [14th Dist.] 1993), **writ granted without reference to merits and cause remanded to trial court for entry of settlement judgment,** 863 S.W.2d 462 (Tex. 1993); *Zubiate,* 808 S.W.2d 590; *Berry Property Management, Inc. v. Bliskey,* 850 S.W.2d 644 (Tex.App.—Corpus Christi 1993, writ dism'd by agr.).

petent, or reckless driver; (3) whom the owner knew or should have known was unlicensed, incompetent or reckless; (4) that the driver was negligent on the occasion in question; and (5) that the driver's negligence proximately caused the accident. In addition, it must be shown that the owner knew or should have known that the driver was either incompetent or habitually reckless and was grossly negligent in entrusting the vehicle to that driver. *Schneider v. Esparanza Transmission Co.*, 744 S.W.2d 595, 596 (Tex. 1987); *Williams v. Steves Industries, Inc.*, 699 S.W.2d 570, 571 (Tex.1985); *Wright v. Cardox Corp.*, 774 S.W.2d 407, 409 (Tex. App.—Houston [14th Dist.] 1989, writ denied).

■ In this case, the McElroys requested that the question on Mrs. McElroy's gross negligence be worded to inquire whether she "knew or should have known that John David McElroy was incompetent or habitually reckless and that she was grossly negligent in entrusting the vehicle to him." The trial court denied the request and in lieu thereof, merely inquired under Question 6: "Was such negligence of LAURA McELROY 'gross negligence'?", followed by the standard definition of gross negligence.[5] Question 6 was conditioned on an affirmative answer to Question 1, which instructed with respect to the question on the ordinary negligence of the McElroys:

> As to LAURA McELROY, 'negligence' means entrusting a vehicle to an unlicensed, reckless, or incompetent driver if the entrustor knew or should have known that the driver was unlicensed, reckless, or incompetent. Such negligence is a proximate cause of a collision if the negligence of the driver to whom the vehicle was entrusted is a proximate cause of the collision.

The question and definition of gross negligence was by itself inadequate to meet the requirements of *Schneider, Williams,* and *Wright* because it did not eliminate the possibility that gross negligence could be found if she entrusted the vehicle to her son whom

she knew or should have known was unlicensed.

Put in another way, by answering Question 1 in the affirmative, the jury found that Mrs. McElroy was negligent because she had entrusted a vehicle to her son who was unlicensed, reckless, or incompetent and whom she knew or should have known was unlicensed, reckless, or incompetent, and that such negligence was a proximate cause of the accident. The jury then found under Question 6 that her negligence amounted to gross negligence. We agree with the McElroys that this was not a proper method to submit the questions of negligent entrustment and gross negligence because it permitted the jury to find gross negligence where the only negligent entrustment may have been in knowingly allowing her unlicensed son to drive her pickup truck, a possibility that is contrary to the holding in *Schneider,* 744 S.W.2d at 596.

In conclusion, we hold that the court's charge improperly instructed the jury and improperly framed the questions so that the jury could find, and may very well have found, that Mrs. McElroy was grossly negligent merely because she knowingly entrusted the vehicle to her unlicensed son whom she knew, or should have known, was unlicensed. Thus, the error of the trial court in incorrectly charging the jury on gross negligence as it applied to a negligent entrustment case amounted to such a denial of Mrs. McElroy's rights as was reasonably calculated to cause and probably did cause the rendition of an improper judgment for exemplary damages. The third point is sustained.

## EVIDENCE OF GROSS NEGLIGENCE

In their fourth and fifth points of error, McElroys contend that there is either no evidence or insufficient evidence to support the jury findings of gross negligence and the award of punitive damages.

■ When presented with a "no evidence" challenge, we must consider only the evidence and reasonable inferences drawn

---

**5.** " 'Gross negligence' means such an entire want of care as to indicate that the act or omission in question was the result of conscious indifference to the rights, welfare, or safety of the persons affected by it."

therefrom which, when viewed in their most favorable light, support the jury verdict or court finding. All evidence and inferences to the contrary are to be disregarded. *Stafford v. Stafford,* 726 S.W.2d 14, 16 (Tex.1987); *Alm v. Aluminum Company of America,* 717 S.W.2d 588, 593 (Tex.1986). If there is more than a scintilla of evidence to support the questioned finding, the no evidence point fails. *Stafford,* 726 S.W.2d at 16.

Under a factual sufficiency point, we must first examine all of the evidence, *Lofton v. Texas Brine Corp.,* 720 S.W.2d 804, 805 (Tex. 1986); and after considering and weighing all of the evidence, we may set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986). Since an appellate court is not a fact finder, we may not pass upon the credibility of the witnesses or substitute our judgment for that of the trier of fact, even if the evidence would support a different result. *Clancy v. Zale Corp.,* 705 S.W.2d 820, 826 (Tex.App.—Dallas 1986, writ ref'd n.r.e.).

 McElroys argue that the fact that Mrs. McElroy knew her son was not licensed and entrusted the vehicle to him is either no evidence or insufficient evidence to support a finding of gross negligence and an award of exemplary damages. Knowingly entrusting a vehicle to an unlicensed driver may support a finding of ordinary negligence, but with nothing more is not sufficient to support a finding of gross negligence. *Williams,* 699 S.W.2d at 574; *Webster v. Carson,* 609 S.W.2d 850, 852 (Tex.Civ.App.—Houston [14th Dist.] 1980, no writ). While we would prefer to classify the fact of knowingly entrusting a vehicle to an unlicensed driver as being insufficient, rather than no, evidence of gross negligence, there is much more evidence than that fact alone in this case.

 The existence of gross negligence need not rest upon a single act but many elements may be considered in determining whether an act constitutes gross negligence. *Lorillard, a Division of Loew's Theatres, Inc. v. Davis,* 770 S.W.2d 606, 610 (Tex. App.—Dallas 1989, writ dismissed w.o.v.). A defendant's state of mind distinguishes gross negligence from ordinary negligence. *Burk Royalty Co. v. Walls,* 616 S.W.2d 911, 920 (Tex.1981). Because a mental state may be inferred from the actions or inactions of a party, we must look at all of the actions and surrounding circumstances which tend to indicate that Mrs. McElroy's state of mind amounted to a conscious indifference on her part. From the evidence, we can determine that Mrs. McElroy not only knew that her son was unlicensed, but that he was underage and could not get a license, that he had no formal driver training or experience, that he had run into a highway sign and gotten a ticket, that he had with little or no experience or supervision worked on and replaced worn brakes on the pickup truck, that he had received two citations for driving without a license, and that he had been stopped by the police many more times and warned to stop driving illegally and on occasion told that he could hurt somebody.

The jury could reasonably have concluded from such evidence that Mrs. McElroy, by allowing her underage son to continue driving, was consciously indifferent to the rights and safety of other persons. The evidence of gross negligence is both legally and factually sufficient to support a jury finding of gross negligence and an award. Points of Error Nos. Four and Five are overruled.

### EVIDENCE OF FUTURE MEDICAL

McElroys assert in their seventh and eighth points of error that there is either no evidence or insufficient evidence to support the jury's finding of $12,000 in future medical expenses.

 Under the no evidence point, we must consider only the evidence tending to support the finding, viewing it in its most favorable light, and giving effect to all reasonable inferences therefrom. *Glover v. Texas General Indemnity Co.,* 619 S.W.2d 400, 401 (Tex.1981). There must be a "reasonable probability" a plaintiff will incur medical costs to justify an award in personal injury cases. *Fibreboard Corp. v. Pool,* 813 S.W.2d 658, 681 (Tex.App.—Texarkana 1991, writ denied). Dr. Brian Gordon, Fitts' family doctor, testified that Fitts sustained in the auto-

mobile accident a whiplash, or "cervical strain, marked," which exacerbated an arthritic condition in his neck, or whiplash. The doctor further testified that he had prescribed anti-inflammatory and muscle relaxant medications, that he had recommended that Fitts visit with a neurologist, and, if the specialist recommended surgery, costs incurred for the operation, medication, and subsequent physiotherapy would be approximately $18,000. Since such evidence amounts to more than a scintilla in support of the finding, the "no evidence" point fails. *Stafford,* 726 S.W.2d at 16.

Turning next to the factual insufficiency complaint, the record indicates that Dr. Gordon was uncertain whether surgery would help Fitts, that the doctor would defer to the recommendation of a specialist with regard to the advisability of surgery, that Fitts had not seen a neurosurgeon or neurologist, and that he had decided against surgery. Dr. Gordon did not testify specifically as to the chances that Fitts would or would not need surgery. *See Fibreboard,* 813 S.W.2d at 682 (Testimony from doctor that there was less than a 50 percent chance of plaintiff developing lung cancer, thus quantitating a general statement with the result it was insufficient to support future medical expenses for that disease.).

While we must examine and weigh all of the evidence, it is not within the province of this Court to pass on the credibility of the witnesses or substitute our judgment for that of the jury, even if the evidence would support a different answer. *Clancy,* 705 S.W.2d at 826. Although the "reasonable probability" requirement has been defined to mean more than a 50 percent chance, we cannot say that the jury's finding was contrary to the great weight and preponderance of the evidence. Therefore, Points of Error Nos. Seven and Eight are overruled.

### NEW CAUSE OF ACTION ASSERTED DURING TRIAL

McElroys contend in Point of Error No. Six that the trial court abused its discretion in granting Fitts leave to file an amended pleading (actually a trial amendment) after the commencement of trial, which added a new cause of action for damages to his vehicle, and in failing to grant them a continuance to conduct discovery or prepare a defense. McElroys' objection to the filing of Fitts' trial amendment was overruled as was their motion for continuance to conduct additional discovery.

When presented with an abuse of discretion challenge, the test for abuse of discretion is not whether, in our opinion, the facts support the trial court's action. On the contrary, we must determine whether the court acted without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985). In other words, we must determine whether the action was arbitrary or unreasonable. The mere fact that a trial court may decide a matter within its discretionary authority in a different manner than would an appellate judge in a similar circumstance does not establish that an abuse of discretion has occurred. *Downer,* 701 S.W.2d at 242. Nor is a mere error of judgment an abuse of discretion. *Loftin v. Martin,* 776 S.W.2d 145, 146 (Tex.1989).

Under TEX.R.CIV.P. 63 and 66, trial courts are given broad discretionary powers to allow parties to amend their pleadings within seven days of, or during, a trial:

- unless there is a showing that such amendment will operate as a surprise to the opposite party; or
- the amendment asserts a new cause of action or defense, and thus is prejudicial on its face, and the opposing party objects to the amendment.

*Greenhalgh v. Service Lloyds Ins. Co.,* 787 S.W.2d 938, 939 (Tex.1990). The burden of convincing the trial court that the late filing of an amended pleading or trial amendment will operate as a surprise rests on the party resisting the filing. *Patino v. Texas Employers Insurance Assoc.,* 491 S.W.2d 754, 756 (Tex.Civ.App.—Austin 1973, writ ref'd n.r.e.).

In our case, McElroys objected on the basis of no information provided in response to discovery, surprise, and unfair prejudice, claiming that allowing the amendment without a continuance denied them the

opportunity of refuting any evidence on the issue. In response, Fitts' attorney asserted that the McElroys and their insurance carrier were aware of the claim Fitts was making for almost a year for what he alleged to be his property damage and that the failure to amend the pleadings was "strictly the fault of the lawyer and shouldn't be held against Mr. Fitts." McElroys offered no evidence in rebuttal to those assertions and thus, failed to carry their burden in showing surprise or prejudice. *American Medical International, Inc. v. Giurintano,* 821 S.W.2d 331, 335 (Tex. App.—Houston [14th Dist.] 1991, no writ). *See also Valdez v. Lyman–Roberts Hospital, Inc.,* 638 S.W.2d 111, 117 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.) ("Something more than a request and a refusal must appear in the record before an appellate court will reverse on an abuse of discretion point.")

As to McElroys' claim that the trial amendment added a new cause of action, this ground for refusing the trial amendment was not brought to the trial court's attention either at the time Fitts made his motion or in any post-trial motion. In this regard, McElroys merely stated that if the trial court accepted the amendment, it would be "[a]llowing an amendment of a new element of damage...." An objection at trial which does not correspond to the objection urged on appeal presents nothing for appellate review. *Board of County Commissioners Of the County of Beaver Oklahoma v. Amarillo Hosp. Dist.,* 835 S.W.2d 115, 126 (Tex.App.— Amarillo 1992, no writ). Moreover, it is elementary that a trial amendment adding property damage allegations to previously alleged personal injury damages in an automobile accident case does not state a new cause of action but merely adds an additional element of damages to an existing cause. McElroys have failed to show a clear abuse of discretion by the trial court. McElroys' sixth point of error is overruled.

### PREJUDGMENT INTEREST ON FUTURE DAMAGES

In their ninth point of error, McElroys raised a question of the propriety of an award of prejudgment interest on future damages under Tex.Rev.Civ.Stat.Ann. art. 5069–1.05 (Vernon Supp.1994), candidly acknowledging that the question would probably be resolved by the outcome of a pair of cases pending before the Supreme Court of Texas. The question has now been answered in *C & H Nationwide, Inc. v. Thompson,* 37 Tex.Sup.Ct.J. 149, 160, 1993 WL 483450 (Nov. 29, 1993), in which the Court held that the applicable statute allows prejudgment interest on future damages.[6] Point of Error No. Nine is overruled.

Having sustained McElroys' Points of Error Nos. One and Three and having overruled all of the rest of their points of error, we modify that part of the judgment of the trial court awarding actual damages by decreasing the total sum awarded as such damages in the amount of $92,964.25 by $37,000 (the amount awarded for past and future loss of earnings) to reflect an award of actual damages in the amount of $55,964.25, and by decreasing the prejudgment interest on actual damages in the same proportion from $3,705.24 to $2,230.55. That part of the judgment as thus modified is affirmed. The part of the judgment awarding exemplary damages of $50,000 against Mrs. McElroy on the jury finding of gross negligence is reversed and the cause remanded to the trial court for retrial of that issue. *See Transportation Insurance Company v. Moriel,* 37 Tex.Sup. Ct.J. 883, 1994 WL 246568 (June 8, 1994); Tex.R.App.P. 81(b)(1).

6. The court concluded that Section 6(a) of Article 5069–1.05 passed in 1987, modified *Cavnar v. Quality Control Parking, Inc.,* 696 S.W.2d 549 (Tex.1985) so as to allow prejudgment interest on future damages, agreeing in this respect with recent holdings of several courts of appeals: *C.T.W. v. B.C.G.,* 809 S.W.2d 788, 795 (Tex. App.—Beaumont 1991, no writ); *Hughes v. Thrash,* 832 S.W.2d 779, 787 (Tex.App.—Houston [1st Dist.] 1992, no writ); *Wal–Mart Stores, Inc. v. Berry,* 833 S.W.2d 587, 596–97 (Tex. App.—Texarkana 1992, writ denied); *Sisters of Charity of the Incarnate Word v. Dunsmoor,* 832 S.W.2d 112, 115–16 (Tex.App.—Austin 1992, writ denied).