COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO.  2-06-046-CV

FRANCIS J. WILLIAMS, JANET DENISE 
 APPELLANTS

DEPOMA, NANCY SHARON WILLIAMS, 

JIMMY WILLIAMS, AND TOMMY WILLIAMS

INDIVIDUALLY AND COLLECTIVELY AS ALL 

THE HEIRS OF CARL H. WILLIAMS

V.

LIFECARE HOSPITALS OF NORTH TEXAS, L.P.                          APPELLEES

D/B/A
 LIFECARE HOSPITAL OF FORT WORTH

AND
 LIFECARE MANAGEMENT SERVICES, L.L.C.

------------

FROM THE 48TH DISTRICT COURT OF TARRANT COUNTY

------------

OPINION

------------

Appellants sued LifeCare Hospitals of North Texas, L.P. d/b/a LifeCare Hospital of Fort Worth (“LifeCare Hospital”) and LifeCare Management Services, L.L.C. (“LifeCare Management”), alleging medical negligence, malice, and single business enterprise and seeking compensatory and exemplary damages.  The trial court rendered judgment on a verdict against appellees based upon jury findings of negligence of LifeCare Hospital and single business enterprise as to both LifeCare entities, awarding compensatory damages, prejudgment interest, and court costs for a total of $544,795.32, with post-judgment interest to accrue at 6.75%, compounded annually.
(footnote: 1)  

Appellants filed a notice of appeal stating that they do not seek to appeal the jury’s findings on which the judgment is based but are appealing the trial court’s refusal to submit certain jury questions and accompanying instructions and definitions and seeking a remand and new trial on those issues that are “clearly separable” from the final judgment without prejudice to the parties.
(footnote: 2)  

Appellees deposited the full amount of the judgment into the registry of the court, including postjudgment interest accrued up to the date the monies were deposited, totaling $547,717.07.  The clerk’s record now on file with this court reflects that the trial court ordered $400,000 disbursed from the registry to appellants and subsequently ordered the remainder to be disbursed to appellants’ attorney of record, and appellants accepted those sums on December 21, 2005, and March 2, 2006, respectively.  Appellees have filed a motion to dismiss the appeal, contending that appellants have accepted the full benefits of the judgment and are estopped to maintain this appeal.  At appellants’ request, we abated the briefing schedule, including the filing of both sides’ briefs, until we dispose of the motion to dismiss. 

“ACCEPTANCE OF BENEFITS” RULE

Appellees contend that appellants are barred from appealing because appellants accepted of the full benefits awarded to them in satisfaction of the judgment.  Appellees rely upon the well-settled “acceptance of benefits” rule, under which a party who accepts the benefit of a judgment is estopped from challenging the judgment by appeal.
(footnote: 3)  
A party cannot “treat a judgment as both right and wrong, and if he has voluntarily accepted the benefits of [the] judgment, he cannot afterward prosecute an appeal therefrom.”
(footnote: 4) 
 The doctrine arises most often in divorce cases in which one spouse accepts certain assets awarded by the judgment and then seeks to appeal the remainder of the judgment.
(footnote: 5)  
The burden is on the appellee to prove that appellant is estopped by the acceptance of the benefits doctrine.
(footnote: 6) 
  

   Appellees recognize that there are two narrow exceptions to the rule:  (1) when acceptance of the benefits is because of financial duress or other economic circumstances; and (2) when the reversal of the judgment on the grounds appealed cannot possibly affect an appellant’s right to the benefits accepted under the judgment.
(footnote: 7) 
 The second exception has also been characterized as applying to situations in which appellant accepts only that which appellee is bound to concede to be due him and the appeal involves only appellant’s right to further recovery.
(footnote: 8) 

Appellants invoke the second exception, urging that they are not appealing the jury’s findings as to any issue submitted by the trial court, including the jury’s findings as to negligence, single business enterprise, and compensatory damages, nor are they complaining of the amount of the judgment rendered on the jury’s findings.  Appellants assert that their only points of error will concern the trial court’s refusal to submit jury questions as to appellee LifeCare Hospital on malice and exemplary damages, on which evidence was submitted and preserved, and accompanying instructions and definitions.
(footnote: 9)   

Appellants contend that their appeal, confined to malice and exemplary damages regarding LifeCare Hospital, seeks only further recovery and is separable from the remainder of the case and, if they are successful on appeal, reversal and remand will only be required as to those issues that were never submitted to the jury.  Appellants also argue, that because malice and exemplary damages as to LifeCare Hospital were not submitted to or found by the judgment, they did not accept any benefits for exemplary damages and are not treating the judgment as both right and wrong as to that part of the case. 

Appellants seek to distinguish the cases cited by appellees as involving appeals that potentially affected the benefits received by the appellants in those cases.
(footnote: 10) 
 Appellants rely upon 
Kline v. O’Quinn
,
(footnote: 11) in which the court of appeals denied appellee’s motion to dismiss an appeal where, as in this case, appellant had accepted the compensatory damages, plus interest, awarded by the judgment and sought only an additional award of punitive damages.     

Kline 
is inapposite.  In that case, an arbitration award ordered both compensatory and punitive damages to be paid to appellant.
(footnote: 12)  The trial court modified the award to delete the amount awarded for punitive damages as improperly submitted to arbitration.
(footnote: 13)  On appeal, appellant did not seek a remand and new trial but merely sought to reinstate the award of punitive damages.
(footnote: 14)  Appellee then paid the compensatory damages, which were accepted by appellant, and moved to dismiss the appeal based on the “acceptance of benefits” rule.
(footnote: 15)  In denying the motion to dismiss, the appellate court noted the two narrow exceptions to the rule and held that the second exception applied because a reversal would simply allow appellant to recover a “further” sum of money of the punitive damages deleted by the trial court and would have no effect on the compensatory damages already awarded and received by her.
(footnote: 16)  The court of appeals ruled that the arbitrator’s award of punitive damages should be reinstated and rendered judgment for that additional amount but denied the claim for attorney’s fees as having been waived.
(footnote: 17) 
 In this case, unlike 
Kline
, appellants seek a reversal and partial remand and new trial on the issues of malice and exemplary damages that were not submitted to the jury in the first trial.  As appellants correctly note, Texas Rule of Appellate Procedure 44.1(b) limits the right to a partial remand as follows:

44.1 Reversible Error in Civil Cases

*   *   *

(b) 
Error Affecting Only Part of Case
.  If the error affects part of, but not all, the matter in controversy 
and that part is separable without unfairness to the parties
, the judgment must be reversed and a new trial ordered only as to the part affected by the error.  The court may not order a separate trial solely on unliquidated damages if liability is contested. [Emphasis added].
(footnote: 18)

THE ISSUES ARE NOT “SEPARABLE”
 

Appellate rule 44.1(b) does not authorize a partial reversal and remand unless the issues are “seperable.”
(footnote: 19)  
If the issues of malice and exemplary damages are not seperable from those of ordinary negligence and compensatory damages, a reversal would require remand for new trial on the entire case, which could affect or even eliminate the liability and amount of compensatory damages awarded to and accepted by appellants in satisfaction of the judgment, thereby taking the case out of the second exception to the “acceptance of benefits” rule and estopping appellants from appealing.  

Appellants also rely upon 
Olin Corp. v. Dyson
,
(footnote: 20) in which the Houston Fourteenth Court of Appeals reduced an award of compensatory damages by the percentage of comparative negligence found by the jury and rendered judgment for the reduced amount but reversed and remanded for new trial the issues of gross negligence and punitive damages on the basis of insufficiency of evidence of gross negligence.  The court determined that those issues were “separable” from the rest of the controversy under former Texas Rule of Civil Procedure 434 (the original rule from which appellate rule 44.1 is taken)
, stating that negligence and gross negligence were two “separable” causes of action.
(footnote: 21)  Because appellant did not challenge the finding of ordinary negligence, the court concluded that a partial remand would not result in unfairness to the parties.
(footnote: 22)  Appellants cite two cases that have followed 
Dyson
 in holding that gross negligence is a “separable” issue from negligence that may be remanded for trial on that issue only.
(footnote: 23)  However, two other cases they cite merely state that negligence and gross negligence “may” be separable, but each holds that those claims were not separable in the distinguishable contexts of those suits.
(footnote: 24) 
 
 
 
In 
Miles v. Ford Motor Co.
,
(footnote: 25) the Texarkana Court of Appeals affirmed a judgment awarding compensatory damages but likewise held that the evidence was insufficient to support findings of gross negligence and malice and remanded only those issues, together with that of the amount of punitive damages, for new trial.  Citing 
Dyson 
both in its original opinion and on rehearing, 
the court of appeals reiterated that recovery for ordinary negligence is based upon ordinary care regardless of intent, whereas gross negligence and malice are based upon the mental state and intent of the actor, so that recovery under those different theories depends on separate and distinct elements of proof and are “separable” within the meaning of former rule 81(b)(1), the immediate predecessor to current appellate rule 44.1(b).
(footnote: 26) 

Because it reversed on other grounds, the majority of the supreme court 
did not address whether the court of appeals had properly remanded for a partial new trial.
(footnote: 27)  But in a concurring opinion, Justice Gonzalez, joined by Justices Hecht and Abbott, disagreed with the court of appeals that a separate trial on gross negligence alone was proper.
(footnote: 28)  In their opinion, negligence and gross negligence are 
not
 separable causes of action but are “inextricably intertwined.”
(footnote: 29) Quoting from 
Transportation Insurance Co. v. Moriel
, the concurring opinion explained that, while negligence is a liability finding involving duty, breach, and causation, gross negligence “presumes a negligent act or omission and includes two [additional] elements: (1) viewed objectively from the standpoint of the actor, the act or omission [i.e., [the] harm-causing negligence] must involve an extreme degree of risk, and considering the probability and magnitude of the potential for harm to others, and (2) the actor must have actual, subjective awareness of the risk involved, but nevertheless proceed in conscious indifference to the rights, safety, or welfare of others.”
(footnote: 30) 
 Because the trial court followed standard practice and instructed the jury not to answer the gross negligence and malice issues unless it found negligence and damages, Justice Gonzalez reasoned, it would not be fair to have a new trial simply on the defendant’s state of mind.
(footnote: 31)  The second jury would lack the context to differentiate between negligence and gross negligence.
(footnote: 32)  Moreover, because the trial court submitted the original charge in broad form, the next jury would not know what act or omission the first jury found to be negligent, and 
because “in all fairness” the court of appeals could not remand the punitive damages issues alone, he would have reversed and remanded the entire cause to the trial court.
(footnote: 33)    

Moriel
 not only adopted a new definition of gross negligence but also imposed new procedural requirements for trials involving gross negligence and exemplary damages, requiring bifurcation of the amount of exemplary damages from the remaining issues upon timely motion, limiting evidence such as net worth to admissibility during the second phase, and, more importantly,
 requiring the same jury in the second phase 
to determine the amount of exemplary damages “considering the totality of evidence presented at both phases of the trial.”
(footnote: 34)  
The court was “concerned that existing procedures failed to ensure that punitive damage awards ‘are not grossly out of proportion to the severity of the offense and have some understandable relationship to compensatory damages.’”
(footnote: 35)  To achieve proportionality, the jury must decide the amount of exemplary damages based on the totality of the evidence from the liability phase as well as the exemplary damages phase.
(footnote: 36)  In that regard, the jury must know of and consider the severity of the wrongdoing as well as the extent of actual damages in determining the amount of exemplary damages.
(footnote: 37)  Indeed, proportionality between the amount of exemplary damages and the liability facts and actual damages suffered is the “most important indicium of reasonableness” when determining whether an exemplary damage award is constitutional.
(footnote: 38)  The same jury must, therefore, sit in both phases of the trial.
(footnote: 39)   Having a different jury determine malice and exemplary damages than the jury that determined ordinary negligence and compensatory damages would contravene the requirements imposed by 
Moriel 
that the same jury hear both phases of the trial and that it determine the amount of exemplary damages  considering the totality of the evidence presented in both phases.
(footnote: 40)  Thus, we agree with our sister court in 
Prati v. New Prime, Inc
.,
(footnote: 41) that
 Dyson
 is no longer controlling in light of the fundamental change in the definition and procedure for determining exemplary damages wrought by
 Moriel
.  We conclude that the issues of malice and exemplary damages, as now required to be determined, are not “separable” from those of the remainder of the case.  If we were to reverse the judgment based on error in refusing to submit malice and exemplary damages, a remand and new trial would be required on those issues.  Yet, because they are not separable from the remainder of the case, appellate rule 44.1(b) would require that we also remand for a new trial on negligence and compensatory damages, which could affect appellants’ right to the benefits accepted under the existing judgment because LifeCare Hospital does not concede liability and could again contest both negligence and the amount of compensatory damages to be awarded.  Therefore, no exception applies to the “acceptance of benefits” rule.   

CONCLUSION

Having concluded that no exception applies to the “acceptance of benefits” rule, we hold that appellants are estopped by that rule to maintain this appeal.  Accordingly, we grant appellees’ Motion to Dismiss, and we hereby dismiss this appeal.  

ANNE GARDNER

JUSTICE

PANEL M: GARDNER, WALKER, and MCCOY, JJ.

DELIVERED:  October 26, 2006

FOOTNOTES
1:
Appellants also sued Errol Bryce, M.D., but the jury found no negligence on his part and the judgment ordered that appellants take nothing as to him.  Appellants do not appeal from the take-nothing judgment as to Bryce.

2:
Appellants requested a partial reporter’s record pursuant to Texas Rule of Appellate Procedure 34.6, listing the issues to be presented on appeal as the trial court’s exclusion of evidence of malice regarding both LifeCare Hospital and LifeCare Management, exclusion of evidence of negligence regarding LifeCare Management, refusal to submit appellants’ requested jury questions on those issues, and denial of their motion to compel allegedly privileged documents pertaining to the issues being appealed. 
 See 
Tex. R. App. P.
 34.6. 

3:
Tex. State Bank v. Amaro
, 87 S.W.3d 538, 544 (Tex. 2002); 
Carle v. Carle
, 149 Tex. 469, 234 S.W.2d 1002, 1004 (1950); 
Waite v. Waite
, 150 S.W.3d 797, 803 (Tex. App.—Houston [14th Dist.] 2004, pet. denied).  

4:
Carle
, 234 S.W.2d at 1004. 

5:
See, e.g., Waite
, 150 S.W.3d at 803; 
Bloom v. Bloom
, 935 S.W.2d 942, 948 (Tex. App.—San Antonio 1996, no writ); 
Blaylock v. Blaylock
, 603 S.W.2d 254, 255 (Tex. Civ. App.—Houston [14th Dist.] 1980, no writ).  

6:
Waite
, 150 S.W.3d at 803
.

7:
Tex. State Bank
, 87 S.W.3d at 544 (holding appellant not estopped to appeal, applying second narrow exception that appellant accepted only benefits that appellee conceded were due him under judgment and appeal was not inconsistent with his acceptance of those benefits); 
Carle, 
234 S.W.2d at 1004; 
Waite
, 150 S.W.3d at 803. 

8:
Carle, 
234 S.W.2d at 1004.

9:
Appellants further represent that they are not now appealing the trial court’s refusal to submit their tendered questions, definitions, and instructions regarding negligence or damages as to LifeCare Management.   

10:
See id. 
at 
1004-05 (holding husband estopped from appealing in divorce case as to characterization of property as separate property of wife because husband had accepted benefits of reimbursement to the community awarded by trial court and property could be characterized as community on new trial); 
Waite
, 150 S.W.3d at 799-800 (husband barred from appealing community property division in divorce case after accepting all community funds awarded him by judgment, even though he sought only additional recovery). 

11:
874 S.W.2d 776, 780-81 (Tex. App.—Houston [14th Dist.] 1994, writ denied).

12:
Id. 
at 779.

13:
Id.

14:
Id. 
at 781.

15:
Id.
 at 780. 

16:
Id.
 at 781.

17:
Id.
 at 787. 

18:
Tex. R. App. P. 44.1(
b
)
. 

19:
Otis Elevator Co. v.  Bedre
, 776 S.W.2d 152, 152 (Tex. 1989) (interpreting former appellate rule 81(b)(1)); 
Waples-Platter Co. v. Commercial Standard Ins. Co.
, 156 Tex. 234, 294 S.W.2d 375, 377 (1956) (interpreting predecessor to appellate rule 81(b)(1), former rule of civil procedure 434); 
Double Ace, Inc. v. Pope
, 190 S.W.3d 18, 27 (Tex. App.—Amarillo 2005, no pet.) (holding compulsory counterclaims not separable without unfairness to parties under rule 44.1(b)).   

20:
678 S.W.2d 650, 659 (Tex. App.—Houston [14th Dist.] 1984), 
rev’d on other grounds
, 692 S.W.2d 456, 458 (Tex. 1985).
  

21:
Id.

22:
Id.
 

23:
McElroy v. Fitts
, 876 S.W.2d 190, 199 (Tex. App.—El Paso 1994, no writ) (op. on reh’g) (remanding for retrial on gross negligence and exemplary damages only); 
Alm v. Aluminum Co. of Am.
, 753 S.W.2d 478, 485-86 (Tex. App.—Houston [14th Dist.] 1988) (op. on reh’g), 
rev’d on other grounds, 
785 S.W.2d
 137 (Tex. 1990).

24:
Newman v. Tropical Visions, Inc
., 891 S.W.2d 713, 
721-22 (Tex. App.—San Antonio 1994, no writ) (holding ordinary and gross negligence not separable in context of release in which plaintiff had waived claim for ordinary negligence); 
Trevino v. Lightning Laydown, Inc
., 
782 S.W.2d 946, 949 (Tex. App.—Austin 1990, writ denied) (holding ordinary and gross negligence not separable in context of comparative negligence).       

25:
922 S.W.2d 572, 599 (Tex. App.—Texarkana 1996), 
rev’d on other grounds
, 967 S.W.2d 377 (Tex. 1998) (plurality opinion).  

26:
Id
. 

27:
Ford Motor Co.
, 967 S.W.2d at 379. 

28:
Id. 
at 
390 (Gonzalez, J., concurring, joined by Hecht and Abbott, JJ.). 

29:
Id.

30:
Id
. (quoting from 
Transportation Ins. Co. v. Moriel
, 879 S.W.2d 10, 23 (Tex. 1994)). 

31:
Id.

32:
Id
.

33:
Id
.

34:
Moriel, 
879 S.W.2d at 30.

35:
Sw. Ref. Co. v. Bernal
, 22 S.W.3d 425, 432-33 (Tex. 2000) (quoting
 Moriel
, 879 S.W.2d at 29, which, in turn, quoted 
Pacific Mut. Life Ins. Co. v. Haslip
, 499 U.S. 1, 22, 111 S. Ct. 1032, 1045 (1991)).

36:
Id.
 at 433.

37:
Id.; see also Alamo Nat’l Bank v. Kraus, 
616 S.W.2d 908, 910 (Tex. 1981) (“Factors to consider in determining whether an award of exemplary damages is reasonable include (1) the nature of the wrong; (2) the character of the conduct involved; (3) the degree of culpability of the wrongdoer; (4) the situation and sensibilities of the parties concerned; and (5) the extent to which such conduct offends a public sense of justice and propriety.”).  

38:
In re Bradle, 
83 S.W.3d 923, 928 (Tex. App.—Austin 2002, no pet.) (orig. proceeding) (quoting 
BMW of N. Am., Inc. v. Gore
, 517 U.S. 559, 568, 116 S. Ct. 1589, 1595 (1996)).   

39:
Id. 
(conditionally granting writ of mandamus, holding trial court abused its discretion in discharging original jury in conversion suit after rendering judgment on verdict of liability, actual damages, and malice, effectively requiring a new jury to determine amount of punitive damages).  

40:
Id
.

41:
949 S.W.2d 552, 558 (Tex. App.—Amarillo 1997, writ denied).