**Reversed and Remanded and Opinion filed August 9, 2012.**



In The

# 𝕱𝖔𝖚𝖗𝖙𝖊𝖊𝖓𝖙𝖍 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘

## NO. 14-11-00401-CV

**SHARYON GATHE, Appellant**

**V.**

**JOSEPH C. GATHE, JR., Appellee**

**On Appeal from the 308th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2006-69829**

## O P I N I O N

Appellant, Sharyon Gathe, appeals the divorce decree entered by the trial court on February 7, 2011, between her and appellee, Joseph C. Gathe, Jr. We reverse and remand.

### BACKGROUND

On November 3, 2006, both Sharyon and Joseph filed their respective petitions for divorce, and the cases were subsequently consolidated into the action filed by Sharyon. On May 16, 2007, Judge Georgia Dempster signed an order on temporary support,

providing for the payment of "fixed expenses" and other sums to be disbursed to the parties "to be used at the respective client's discretion for personal expenses."

On September 24, 2008, Judge Dempster struck Sharyon's jury demand for her counsel's failure to attend a pretrial conference, and ordered the parties to attend mediation. Judge Dempster conducted a bench trial from September 29, 2008, to October 1, 2008, and granted the divorce but did not issue a ruling on the property issues or children's issues. At an October 29, 2008 status conference, Judge Dempster announced that she was refusing to accept the parties' mediated settlement agreement on custody issues, and stated that she "want[ed] a trial on custody." The bench trial addressing custody occurred on November 13 and 14, 2008. On November 14, 2008, Judge Dempster orally rendered judgment by granting the divorce, adopting Joseph's proposed property division, and ruling on the children's issues. On March 27, 2009, Judge Dempster signed the divorce decree.

On April 27, 2009, Sharyon filed a motion for new trial, raising a number of complaints, including that the trial court erred by not including accounts receivable from Joseph's medical practice from August 31, 2008, through November 14, 2008—the date of oral rendition of judgment—in the division of property, and that the terms regarding the children's extracurricular activities were vague and unenforceable. On June 9, 2009, Judge Lisa Millard held a hearing on Sharyon's motion for new trial. That same day, Judge Millard signed an order granting the motion for new trial on the accounts receivable issue and the children's extracurricular activities issue. Judge Millard also granted the motion to reform the judgment to be consistent with the parties' mediated settlement agreement on the children's issues. Judge Millard's order states, in relevant part:

> 1. It is therefore ORDERED that the Final Decree of Divorce signed March 27, 2009 in this cause is hereby set aside for all purposes and that a new trial in this cause is granted on issues [sic] No. 13 and Issue No[.] 7 as contained in Petitioner['s] motion which necessitates a new trial on the division of property.

* * *

3.   It is further ORDERED that the Final Decree of Divorce signed on March 27, 2009 in this cause is hereby set aside and that a modified and reformed final judgment shall be entered to reflect modification and reformation consistent with enforcement of the parties['] mediated settlement agreements as executed in this cause.[1]

At a hearing on September 28, 2009, Judge Dempster denied Joseph's request to set aside Judge Millard's order granting the motion for new trial, and ordered that the temporary orders were in effect.[2]  Due to Judge Dempster's health issues, the case was assigned to Judge Thomas Stansbury on June 29, 2010.  On September 15, 2010, Judge Stansbury orally granted Joseph's request to limit the scope of the new trial to the amount of accounts receivable related to Joseph's medical practice.

---

[1] The following exchange took place before Judge Millard:

THE COURT: . . . The Court is going to grant the motion to reform on the ground that the Court failed to enforce the terms of the parties' binding mediated settlement agreement.  And the Court grants the motion for new trial on Issue No. 7 and 13. . . .

MS. SMYTH [Sharyon's counsel]:  Your Honor, to the extent that No. 7 relates to a property division, is that a new trial on that issue?

THE COURT: Yes, ma'am.

* * *

MR. NASS [Joseph's counsel]: So, Judge, if I understand your ruling, the motion for new trial is exclusively on Issue 7 and 13?

THE COURT: It is, but y'all understand the law, right?

MS. SMYTH: Right.  That it's as to the property division in its entirety because we can't piecemeal that issue, Judge.

THE COURT: Yes.

[2] Initially, Judge Dempster granted Joseph's motion to reconsider, but then denied it at the end of the hearing.  The primary issue at the hearing was the method for determining the amount of the accounts receivable and distributing them as ordered in the decree.  The court-appointed auditor testified by phone at the hearing that the method provided in the decree was "unworkable" and would require post-divorce division of property "four and five years out and [would be] very expensive."  The auditor testified that it would be less expensive to retry that issue and have a new order than to continue with "what [he] ha[d] been charged to do."  Sharyon's attorney stated that the trial court could modify the judgment, without a new trial, to change the method for dividing the accounts receivable.  Judge Dempster agreed but stated, "I really do not want to open this up, but I don't think I have any choice.  I'm going to have to reconsider the Motion to Reconsider and I'm going to deny it."  Judge Dempster ordered that the temporary orders were in effect and that the inventories be updated.

3

On December 14, 2010, Judge Stansbury entered an "Order Releasing Funds" stating, in relevant part: "To eliminate any confusion, any and all temporary orders for interim support that may be construed to be in effect in this case are superceded by this order." The trial court further ordered that a certain brokerage account "referred to on page 40 of the Decree of Divorce entered by the Court on March 27, 2009 . . . shall be divided as directed in said Decree." The March 27, 2009 decree had awarded Sharyon 52.34% of that account.

On January 14, 2011, Judge Stansbury signed the following Order for New Trial and Scheduling Order, in relevant part:

> The Court finds that the Final Decree of Divorce ("Decree") was signed in this case on March 27, 2009, and that the Decree is fully enforceable in all respects except for the two points on which this Court grants the Motion for New Trial.
>
> Specifically, the Court grants the Motion for New Trial on the following specific points:
>
> 1. The Court erred in signing off on the terms contained on pages 19 and 20 of the Decree under the heading "b. Extracurricular Activities" because such terms are vague, ambiguous, confusing and generally unenforceable and those terms need to be made enforceable; and
>
> 2. The Court erred when it fixed each party's fifty percent (50%) interest in the accounts receivable in the Joseph C. Gathe, Jr. MD PA as of August 31, 2008 because that was prior to the trial of the case, and the Court should have fixed each party's fifty percent (50%) interest in the accounts receivable in the Joseph C. Gathe, Jr. MD PA (the "Practice") as of November 14, 2008, which was the last day of this case.

On February 7, 2011, Judge Stansbury held a new trial hearing and signed a new decree. As relevant here, the new decree awarded Joseph and Sharyon each 50% of the accounts receivable of Joseph's medical practice as of November 14, 2008. With respect to the evidence heard, the February 7, 2011 decree stated:

> On September 29 through October 1, 2008 and November 13 through November 14, 2008 the Court heard this case. The Court also considered evidence presented on June 9, 2009; September 28, 2009;

4

September 15, 2010; December 13, 2010; and February 7, 2011. With respect to the date of the decree, the new decree stated:

> This divorce judicially PRONOUNCED AND RENDERED in court at Houston, HARRIS County, Texas, on November 14 2008 and further noted on the court's docket sheet on the same date, but signed on February 7, 2011.

On April 29, 2011, Sharyon filed her notice of appeal. On May 23, 2011, Judge James Lombardino held a hearing on Sharyon's request for temporary orders pending appeal, and denied her request.

Sharyon brings the following five issues in this appeal: (1) the trial court erred in limiting the scope of the new trial; (2) the failure of the trial court to issue findings of fact and conclusions of law prevents Sharyon from effectively presenting her appeal; (3) the evidence is legally and factually insufficient to support the division of property in the February 7, 2011 decree; (4) the evidence is legally and factually insufficient to support the granting of the parties' divorce; and (5) the trial court erred by reciting in the February 7, 2011 decree that judgment was rendered on November 14, 2008. As an initial matter, Joseph claims, in his first counter-point, that Sharyon's appeal should be dismissed because she has accepted the benefits of the judgment she is appealing.

## ANALYSIS

### Acceptance of Benefits Doctrine

A party who accepts the benefits of a judgment is estopped to challenge the judgment on appeal. *Tex. State Bank v. Amaro*, 87 S.W.3d 538, 544 (Tex. 2002); *Carle v. Carle*, 149 Tex. 469, 234 S.W.2d 1002, 1004 (1950). "A litigant cannot treat a judgment as both right and wrong, and if he has voluntarily accepted the benefits of a judgment, he cannot afterward prosecute an appeal therefrom." *Carle*, 234 S.W.2d at 1004. The doctrine arises frequently in divorce cases in which one spouse accepts certain assets awarded by the judgment and then seeks to appeal the remainder of the judgment. *Williams v. LifeCare Hosps. of N. Tex., L.P.*, 207 S.W.3d 828, 830 (Tex. App.—Fort Worth 2006, no pet.); *Waite v. Waite*, 150 S.W.3d 797, 803 (Tex. App.—Houston [14th

5

Dist.] 2004, pet. denied).

The burden is on the appellee to prove that the appellant is estopped by the acceptance of benefits doctrine. *Waite*, 150 S.W.3d at 803. Once the appellee establishes the appellant's acceptance of benefits, the appellant must establish either that the doctrine does not apply or that an exception to estoppel by acceptance of benefits applies. *Sprague v. Sprague*, 363 S.W.3d 788, 793 (Tex. App.—Houston [14th Dist.] 2012, pet. filed). The doctrine does not apply when (1) the appellant's acceptance of the benefits is due to financial duress or other economic circumstances, or (2) the appellant's right to the benefit accepted could not possibly be affected by reversal of the judgment on the grounds appealed. *Williams*, 207 S.W.3d at 830; *Waite*, 150 S.W.3d at 803–04. The acceptance of cash benefits is an exception to the doctrine. *Demler v. Demler*, 836 S.W.2d 696, 698 (Tex. App.—Dallas 1992, no writ), *disapproved on other grounds*, *Dallas Mkt. Ctr. Dev. Co. v. Liedeker*, 958 S.W.2d 382, 386 (Tex. 1997) (per curiam) ("Acceptance of cash benefits has been held as an exception to the general rule announced in *Carle*."); *see also Sprague v. Sprague*, 363 S.W.3d 788, 793 (Tex. App.—Houston [14th Dist.] 2012, pet. filed) (explaining that the acceptance of benefits doctrine does not apply if the benefit accepted was cash, the use of which would not prejudice the appellee).

Joseph contends that the March 27, 2009 decree was only partially set aside by Judge Millard's order granting Sharyon's motion for new trial, such that it was still "fully enforceable" as determined by Judge Stansbury in his January 14, 2011 order for new trial. Therefore, because the March 27, 2009 decree purportedly was still in effect, Joseph posits that Sharyon accepted benefits awarded under that decree, in addition to accepting benefits under the February 7, 2011 decree. Sharyon, on the other hand, asserts that the March 27, 2009 decree was completely set aside by Judge Millard's order granting her motion for new trial and, therefore, she could not have accepted benefits awarded under that decree. Sharyon further argues that she did not accept benefits under the February 7, 2011 decree or, if she did, she satisfied one of the exceptions to the

6

doctrine.

Before we address whether Sharyon accepted any benefits, we first must determine what effect Judge Millard's order granting Sharyon's motion for new trial had on the March 27, 2009 decree, and whether Judge Stansbury could find that the March 27, 2009 decree was "fully enforceable," with the exception of two issues, when he signed the January 14, 2011 order for new trial and scheduling order.

Granting a new trial has the legal effect of vacating the original judgment and returning the case to the trial docket as though there had been no previous trial or hearing. *Markowitz v. Markowitz*, 118 S.W.3d 82, 88 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). When a motion for new trial is granted, the original judgment is set aside and the parties may proceed without prejudice from previous proceedings. *Id.* Thus, when the trial court grants a motion for new trial, the court essentially wipes the slate clean and starts over. *Wilkins v. Methodist Health Care Sys.*, 160 S.W.3d 559, 563 (Tex. 2005).

Joseph claims that Judge Millard only partially set aside the March 27, 2009 decree as provided by Rule 320 of the of the Texas Rules of Civil Procedure, which provides, in relevant part:

> New trials may be granted and judgment set aside for good cause, on motion or on the court's own motion on such terms as the court shall direct. . . . When it appears to the court that a new trial should be granted on a point or points that affect only a part of the matters in controversy and that such part is clearly separable without unfairness to the parties, the court may grant a new trial as to that part only . . . .

TEX. R. CIV. P. 320. We do not agree that Judge Millard ordered a new trial on only one property issue or that the March 27, 2009 decree was not set aside in its entirety. Under Judge Millard's order, the March 27, 2009 decree was "set aside for all purposes" and a new trial was granted on the accounts receivable from August 31, 2008 to November 14, 2008, "as contained in Petitioners [sic] motion which necessitates a new trial on the division of property." Judge Millard's order clearly sets aside the entire March 27, 2009 decree and orders a new trial on the division of property, not just on the accounts

7

receivable issue.

Moreover, the issue of divorce and the issue of property division are not severable. *Herschberg v. Herschberg*, 994 S.W.2d 273, 277 (Tex. App.—Corpus Christi 1999, no pet.); *Hollaway v. Hollaway*, 792 S.W.2d 168, 170 (Tex. App.—Houston [1st Dist.] 1990, writ denied). Because Section 7.001 of the Texas Family Code makes the division of property in a divorce action mandatory, it is error for the trial court to sever the issue of divorce from the issue of property division.[3] *Phillips v. Phillips*, 75 S.W.3d 564, 567 (Tex. App.—Beaumont 2002, no pet.); *Herschberg*, 994 S.W.2d at 277; *Reed v. Williams*, 545 S.W.2d 33, 34 (Tex. Civ. App.—San Antonio 1976, no writ). Rule 320 applies to divorce cases, and a trial court may grant a partial new trial on property issues. *Vautrain v. Vautrain*, 646 S.W.2d 309, 315 (Tex. App.—Fort Worth 1983, writ dism'd). However, "[i]n the event the court seeks to grant a partial new trial on certain property issues, it must grant a new trial on all issues since they may not be severed, or treat the order granting a divorce as interlocutory and proceed to consider the property issues, or what remains of them, on new trial." *Id.*

Therefore, Judge Millard's order ordering a partial new trial on the property division rendered the divorce interlocutory, and there was no final judgment. *See Holloway*, 792 S.W.2d at 170; *Underhill v. Underhill*, 614 S.W.2d 178, 181 (Tex. Civ. App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.); *In re Marriage of Johnson*, 595 S.W.2d 900, 903 (Tex. Civ. App.—Amarillo 1980, writ dism'd w.o.j.). Thus, Sharyon and Joseph were still married. *See Vautrain*, 646 S.W.2d at 316 ("The divorce was interlocutory until the disposition of all issues . . . and the parties remained married up through that date."). As such, from June 9, 2009, to January 14, 2011, there was no divorce, no final decree, and no final judgment.

Joseph contends, in the alternative, that Judge Stansbury, by his January 14, 2011

---

[3] Section 7.001 provides: "In a decree of divorce or annulment, the court shall order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party and any children in the marriage." TEX. FAM. CODE ANN. § 7.001 (West 2006).

8

order, "ungranted" Judge Millard's order granting the new trial, reinstated the March 27, 2009 decree, and granted a new trial with an express limitation on the scope of the new trial. The trial court has plenary power to set aside an order granting a new trial any time before a final judgment is entered. *In re Baylor Med. Ctr. at Garland*, 280 S.W.3d 227, 231 (Tex. 2008) (orig. proceeding). Judge Stansbury's January 14, 2011 order does not explicitly set aside Judge Millard's new trial order. Instead, it finds that the March 27, 2009 decree is "fully enforceable in all respects except for the two points on which this Court grants the Motion for New Trial."

However, even if Judge Stansbury had "ungranted" the motion for new trial made the subject of Judge Millard's order granting the new trial, such action did not automatically reinstate the March 27, 2009 decree. The granting of a motion for new trial causes the case to be reinstated on the docket as if no trial had occurred, and an oral pronouncement of judgment and a written judgment based on the trial are wiped clean. *In re Dep't of Family & Protective Servs.*, 273 S.W.3d 637, 644 (Tex. 2009) (orig. proceeding). When the trial court "ungrants" a new trial, the original judgment cannot be reinstated; rather, the trial court must enter a new judgment. *Id.* Therefore, the March 27, 2009 decree was not reinstated, but was still set aside for all purposes and was interlocutory.

Having determined that the March 27, 2009 decree was interlocutory rather than final, we conclude that Sharyon could not have accepted benefits of the March 27, 2009 decree.

Joseph claims Sharyon accepted benefits from checks totaling $151,000 in March 2009, representing 50% of proceeds from accounts related to "drug studies" for pharmaceutical companies, by expending those funds. Sharyon was awarded 50% of drug study accounts in the March 27, 2009 decree. However, as addressed above, Judge Millard set aside the March 27, 2009 decree in its entirety and, therefore, Sharyon could not have accepted benefits from it.

9

Joseph contends that Sharyon accepted benefits by spending over $300,000 of a brokerage account awarded to her, which contained $573,000 in securities, leaving only $200,000 in the account by the time of the May 23, 2011 hearing on Sharyon's request for temporary orders pending appeal. The March 27, 2009 decree, which was set aside, awarded Sharyon 52.34% of that brokerage account. On June 10, 2010, Judge Don Ritter signed an order permitting Sharyon to withdraw "not more than $30,000.00" from that account. Furthermore, on December 14, 2010, Judge Stansbury signed an "Order Releasing Funds," specifically "award[ing] 52.34% of the balance . . . less the sum of $30,000 and any addition sums, if any, withdrawn" by Sharyon "at any time since May 14, 2010." Sharyon testified at the May 23, 2011 hearing that she had had access to that account since December 2010. However, there was no final judgment in December 2010, as the March 27, 2009 decree had been set aside in its entirety. The February 7, 2011 decree also awarded Sharyon 52.34% of that account, "which was previously divided pursuant to the court's order dated December 14, 2010." Joseph has not shown to what extent Sharyon has spent any money from that account after February 7, 2011.

Joseph asserts that Sharyon accepted benefits because he gave her a check in the amount of $169,092 as part of the property division. However, Sharyon testified at the May 23, 2011 hearing that she had not negotiated the check.

Joseph claims that Sharyon accepted the benefits because she took out a mortgage on her cars to pay for private school tuition for their daughter for the 2010–11 school year. Sharyon testified at the May 23, 2011 hearing that she did not have the resources to pay the tuition, and she already had paid off the mortgage on her cars. Joseph states that Sharyon admitted at the May 23, 2011 hearing that Joseph had paid private school tuition for every year prior to 2011. However, Joseph testified at that same hearing that he did not pay their daughter's tuition for the 2010–11 school year because Sharyon had enrolled her in a different school without Joseph's consent or knowledge. Moreover, Joseph does not state when Sharyon mortgaged her cars. If Sharyon mortgaged her cars prior to the February 7, 2011 decree, then there was no final judgment from which

10

Sharyon could accept benefits.

Joseph argues that Sharyon has accepted the benefit of the judgment by living in the family home with no mortgage. Both the March 27, 2009 decree and the February 7, 2011 decree awarded Sharyon the family home. However, Joseph admitted at the May 23, 2011 hearing that he had not signed over the special warranty deed on the house. Sharyon has not sold and is unable to sell the house.

Joseph avers that Sharyon accepted benefits because she was awarded $200,000 in stock and bonds in the property division. However, Sharyon testified at the May 23, 2011 hearing that she had not used the funds from those stocks and bonds.

Joseph claims that Sharyon accepted benefits because she cashed out an IRA that was awarded to her. Joseph testified at the May 23, 2011 hearing that two IRAs were awarded to Sharyon in the divorce decree—one in her name and one in his name. Joseph testified that he transferred the money from the IRA that was in his name to the IRA that was in Sharyon's name on February 25, 2011. No current statements of the accounts that were in Sharyon's name were produced at the May 23, 2011 hearing. Sharyon admitted that she cashed out one of the IRAs to pay bills. Sharyon testified any funds she expended were due to economic necessity, and she presented evidence on her monthly expenses, which Joseph did not controvert. Moreover, the acceptance of cash benefits is an exception to the acceptance of benefits doctrine. *Sprague*, 363 S.W.3d at 793; *Demler*, 836 S.W.2d at 698.

In summary, we conclude that Sharyon could not have accepted benefits from a non-existent March 27, 2009 decree. To the extent Joseph adduced any evidence that Sharyon accepted benefits of the February 7, 2011 decree, we conclude that she established economic necessity. We overrule Joseph's first counter-point.

## Assets Acquired between November 14, 2008, and February 7, 2011

In her first issue, Sharyon argues that the trial court erred by not considering the accumulation of assets from November 14, 2008, to February 7, 2011. We agree and find

the Fort Worth Court of Appeals' opinion in *Vautrain* relevant to this issue.

In *Vautrain*, the trial court granted a partial new trial with respect to the division of certain property. 646 S.W.2d at 310–11. The trial court held that the oral judgment pronounced on May 29, 1981, was final and refused to consider any community property that was acquired, changed, or increased between the May 29, 1981 oral judgment and the new judgment that was orally pronounced on November 19, 1981, after the new trial hearing. *Id.* at 311. The court of appeals agreed with the appellant's position that the trial court's granting of a partial new trial made the original written judgment interlocutory and, therefore, the parties were not finally divorced as of the date of the original oral rendition on May 29, 1981. *Id.* at 312.

The *Vautrain* court held that, by granting a partial new trial, the trial court rendered the divorce decree interlocutory, reserving other property issues for later determination, and the parties could not be finally divorced and thus remained married until the disposition of all property issues at the new trial hearing. *Id.* at 316. "Since the parties were still married all the applicable community property law in force in the State of Texas applied to any increases or acquisitions of community property from and after May 29, 1981." *Id.* Therefore, the trial court erred by not hearing evidence on, and disposing of, all community property that came into the estate between original oral rendition on May 29, 1981, and judgment rendered after the new trial hearing on November 19, 1981. *Id.*

Joseph asserts that *Vautrain* does not apply to this case because there was no second rendition of judgment or two years' accumulation of assets. We disagree. Once Judge Millard granted the motion for new trial and set aside the March 27, 2009 decree, it was as if the case had never been tried. *See In re Dep't of Family & Protective Servs.*, 273 S.W.3d at 644; *Markowitz*, 118 S.W.3d at 88. Even if Judge Stansbury had "ungranted" the new trial granted in Judge Millard's order, the March 27, 2009 decree was not automatically reinstated. Judge Stansbury would have had to render a new judgment. *See In re Dep't of Family & Protective Servs.*, 273 S.W.3d at 644. Moreover,

12

the granting of a partial new trial on the property division rendered the divorce decree interlocutory, and there could be no final judgment until the trial court disposed of the property issues. *See Holloway*, 792 S.W.2d at 170; *Underhill*, 614 S.W.2d at 181; *In re Marriage of Johnson*, 595 S.W.2d at 903. Therefore, there was a second rendition of judgment on February 7, 2011, despite Judge Stansbury's (1) finding the March 27, 2009 decree "fully enforceable" with the exception of the two issues, and (2) dating the decree as having been in effect as of Judge Dempster's November 14, 2008 oral rendition of judgment. We conclude that the trial court erred by not considering assets which had accumulated between November 14, 2008, and February 7, 2011. *See Vautrain*, 646 S.W.2d at 316.[4] We sustain Sharyon's first issue.

### Sufficiency of the Evidence Supporting the February 7, 2011 Decree

In her third and fourth issues, Sharyon argues the evidence is legally and factually insufficient to support (1) the property division in the February 7, 2011 decree,[5] and (2) the granting of the parties' divorce.[6] Sharyon argues that because the March 27, 2009 decree was set aside and not reinstated, evidence presented at the original trial before Judge Dempster cannot be used to support the February 7, 2011 decree. Joseph responds that Sharyon's position would render moot the trial court's authority to either grant a partial new trial or ungrant a motion for new trial. We disagree with Joseph's contention.

---

[4] In an offer of proof at the February 7, 2011 new trial hearing, Sharyon's attorney cross-examined Joseph about the profitability of his medical practice in 2009 and 2010. Joseph testified that he "ma[de] more money than [he] spent," but he did not know "the amount of income earned" through his medical practice in 2009 or 2010.

[5] The February 7, 2011 decree states that the division of the parties' marital estate is just and right, having due regard for the rights of each party and the children of the marriage. *See* TEX. FAM. CODE ANN. § 7.001 (providing that, in a decree of divorce or annulment, the court shall order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage).

[6] The February 7, 2011 decree granted the parties' divorce "on the ground of insupportability" and found that Sharyon had been a domiciliary of Texas for the preceding six-month period and a resident of the county in which the suit was filed for the preceding ninety-day period. *See* TEX. FAM. CODE ANN. § 6.001 (West 2006) (providing that the trial court may grant divorce on insupportability); *id.* § 6.301(1) (West 2006) (providing that a suit for divorce may not be maintained unless the petitioner or respondent has been a domiciliary of this state for the preceding six-month period and a resident of the county in which the suit is filed for the preceding ninety-day period).

13

As explained above, Judge Millard's order set aside the March 27, 2009 decree for all purposes. Judge Stansbury's purported "ungranting" of the new trial ordered in Judge Millard's new trial order and finding the March 27, 2009 decree "fully enforceable" did not reinstate the March 27, 2009 decree or November 14, 2008 oral rendition of judgment. *See In re Dep't of Family & Protective Servs.*, 273 S.W.3d at 644. Moreover, the granting of a partial new trial on the division of property rendered the March 27, 2009 decree interlocutory, and there could be no final judgment until the trial court had disposed of the property issues. *See Holloway*, 792 S.W.2d at 170; *Underhill*, 614 S.W.2d at 181; *In re Marriage of Johnson*, 595 S.W.2d at 903.

The February 7, 2011 decree states with respect to the evidence heard in this case:

> On September 29 through October 2008 and November 13 through November 14, 2008 the Court heard this case. The Court also considered evidence presented on June 9, 2009; September 28, 2009; September 15, 2010; December 13, 2010; and February 7, 2011.

While Rule 18 of the Texas Rules of Civil Procedure allows successor judges to dispose of unresolved matters and enter orders, it does not permit the successor judge to render judgment without hearing evidence. *Fid. & Guar. Life Ins. Co. v. Pina*, 165 S.W.3d 416, 421 (Tex. App.—Corpus Christ 2005, no pet.); *W.C. Banks, Inc. v. Team, Inc.*, 783 S.W.2d 783, 786 (Tex. App.—Houston [1st Dist.] 1990, no writ); *see also Bexar Cnty. Ice Cream Co. v. Swensen's Ice Cream Co.*, 859 S.W.2d 402, 404 (Tex. App.—San Antonio 1993, writ denied), *overruled on other grounds by Barraza v. Koliba*, 933 S.W.2d 164, 167 (Tex. App.—San Antonio 1996, writ denied) ("We agree that a judge who has heard no evidence cannot rule on a case."). Joseph argues that Judge Stansbury did not render judgment on evidence that he did not hear because the new trial only dealt with accounts receivable from August 31, 2008, to November 14, 2008. The February 7, 2011 decree recites that evidence from the 2008 trial and other hearings was considered. However, Judge Stansbury only heard evidence on a very discrete asset, without having heard evidence on any of the other numerous assets or other issues. We conclude that the evidence is legally insufficient to support the property

14

division and the granting of the divorce. We sustain Sharyon's third and fourth issues.[7]

## Recitation that Judgment was Rendered on November 14, 2008

In her fifth issue, Sharyon claims that the trial court erred by reciting in the February 7, 2011 decree that judgment was rendered on November 14, 2008. Both Judge Dempster's oral rendition and written decree were vacated when Judge Millard granted the motion for new trial. *See In re Dep't of Family & Protective Servs.*, 273 S.W.3d at 644. Judge Stansbury's January 14, 2011 new trial order did not automatically reinstate the March 27, 2009 decree or November 14, 2008 oral rendition, and to do so Judge Stansbury would have to have entered a new judgment. *See id.* We conclude that the trial court erred by reciting that judgment was rendered on November 14, 2008. We sustain Sharyon's fifth issue.[8]

Having sustained Sharyon's first, third, fourth, and fifth issues, we reverse the trial court's February 7, 2011 decree and remand the case to the trial court for proceedings consistent with this opinion.

/s/    Sharon McCally
       Justice

Panel consists of Justices Frost, McCally, and Busby.

---

[7] In his second counter-point, Joseph asserts that Sharyon has not shown that the property division was not just and right. However, in light of our disposition on Sharyon's third issue, we overrule Joseph's second counter-point.

[8] We need not address Sharyon's second issue in which she asserts that the trial court's failure to issue findings of fact and conclusions of law prevents her from presenting her appeal.