Opinion issued July 2, 2024



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-22-00612-CV

————————————

**KRISTOPHER LEANARD, Appellant**

**V.**

**ASHLEY TRETSVEN, Appellee**

---

**On Appeal from the 280th District Court**
**Harris County, Texas**
**Trial Court Case No. 2022-07307**

---

## MEMORANDUM OPINION

Appellant Kristopher Leanard appeals the protective ordered rendered against him. In two issues, he argues (1) that the order is void because the trial court lacked authority to render the order and (2) that the evidence was insufficient to support the trial court's findings in the protective order. Because we conclude

that the trial court lacked the authority to render the protective order, we hold that the protective order signed on June 29, 2022, is void. We vacate the trial court's order and dismiss the case.

## Background

Appellant Kristopher Leanard and appellee Ashley Tretsven have two children together, T.L. and B.L., who were nine and eleven, respectively, at the time of the underlying proceedings. On February 7, 2022, Tretsven filed an application for a protective order on behalf T.L. and B.L., asserting that they needed protection from their father, Leanard. Tretsven's application noted that there was also a proceeding for modification of the parties' previous child-custody order pending in the 309th District Court. In her application, Tretsven sought the protective order on the grounds that Leanard had "committed family violence and is likely to commit family violence in the future." In her declaration attached to the application for protective order, Tretsven recounted that "Kristopher threatened to kill my daughter [B.L.], by chopping off her ankles and hanging her on a tree to bleed out," stating that the incident occurred on January 22, 2022. She further declared that on "January 13, 2022, Kristopher squeezed [T.L.'s] neck until he could barely breathe" and on "January 21, 2022, Kristopher put the blade of a sword on Troy's neck and threatened to chop off his head."

2

On February 14, 2022, the parties appeared for a hearing on the protective order before the Honorable Bonnie Hellums, who was sitting as a visiting judge. Leanard's counsel argued that the protective order issues "should be taken up as part of the modification" that Tretsven had filed in the 309th on January 28, 2022. Tretsven began to testify regarding instances reported to her by the children, and Leanard objected that her testimony regarding things her children told her was hearsay. The trial court decided to continue the trial and appointed an amicus attorney for the children.

The hearing reconvened on February 23, 2022, with Judge Hellums presiding. Tretsven testified that Leanard "has been abusing [her] kids" and that he admitted to her that "he did squeeze [T.L.'s] neck." Tretsven began to relate the threats reported to her by her children when Leanard objected based on hearsay. The trial court sustained the objection, and Tretsven stated that the only thing she had personal knowledge of was Leanard's admission to choking T.L. She could not remember when that event occurred.

The children's amicus attorney also questioned Tretsven. Tretsven testified that T.L., the eleven-year-old, made an outcry to her on January 13, 2022. Leanard objected based on hearsay, and counsel for the children responded that "Family Code section[s] 84.006 and 104.006 [provide an] exception to the hearsay rule for children under the age of twelve when an application for protective order has been

3

brought." The trial court overruled the hearsay objection and allowed Tretsven to testify to the outcry made by T.L., which was that Leanard "had squeezed his neck until he could barely breathe." Tretsven testified that T.L. was "very upset and he was scared" when he relayed this information to her. T.L. also told her that "his father threatened to chop off his head and—with a sword, as well as [B.L.] [B.L.] says the same thing and they were very scared." Tretsven further testified that B.L. made an outcry that "her father was threatening to kill her by chopping off her ankles and making her bleed out." Tretsven testified that she had known Leanard to be threatening in the past, stating that he had threatened to shoot her and to kill her in the past.

Tretsven also testified that she smelled alcohol on Leanard's breath "[a]lmost every single time" he returned the children to her care. Tretsven testified that she has observed her children prior to leaving to visit their father, stating, "They're frightened. They're crying. [B.L.] has outright told me that she's not leaving." Tretsven stated that she was concerned about the safety and welfare of her children.

Tretsven's neighbor testified that she observed Leanard come to pick the children up approximately one month before the hearing. She observed that the children appeared to be very unhappy, and B.L. in particular looked like she did not want to go with her father. The neighbor testified that B.L. indicated that she

did not want to go to her father's anymore "because he is a drunk and always has empty beer bottles in his room." B.L. repeated to the neighbor her outcry that her father "threatened to cut off her ankles and hang her in the back yard." B.L. also told the neighbor that Leanard "put a sword to her brother's neck and also called him the 'N' word." B.L. appeared frightened and upset when she relayed this information to the neighbor.

Leanard declined to testify on the advice of his counsel. Test results were admitted into evidence showing that Leanard had tested positive for alcohol use sometime in the 72 hours before the test was taken. His test results were negative for any other drugs. Tretsven acknowledged that Leanard did not have any criminal history regarding drug use or domestic violence.

Judge Hellums made findings on the record:

> The Court finds that family violence has indeed—or the threat thereof has indeed occurred and is likely to occur again and therefore is granting the protective order to protect these two children from their father. Given the drug test that was presented, I think we do have an alcohol problem. I certainly hope that he would get into treatment and take care of it. Perhaps he could even apply to the drug court and get some help there through the family drug court, which is operating under Court 997, Judge Griffith. I think that if he can show a—proof of being in a treatment center of some variety and constantly preparing—having clean drug tests come back, this certainly could be considered for a rehearing in say another—I'm gonna grant the protective order for two years. And if he has any visitation with these children, it needs to be supervised by the Domestic Relations Office and he can—he can meet with the children there. But he's not to drive with them. He's not to have them in his own possession by himself for at least these next two years.

5

Judge Hellums went on to express a belief that the children needed trauma-informed therapy, and she stated that Leanard "needs to go to the batterer's program, which would cover for the—what has been alleged that he has done to the children and I feel is indeed what has happened." She also stated that Leanard "for sure" needed to take a parenting class. She further stated on the record: "Also if there's a sword involved, that sword needs to be gotten rid of. He's prohibited from having the sword at any time around while having the children. I also would restrict him from using any racial slur with the children. There needs to be a prohibition against that kind of language."

On May 25, 2022, Leanard, who had retained new counsel, moved for rehearing of the protective order application before the final protective order had been rendered. On June 6, 2022, the Honorable Barbara Stalder held a hearing on the entry of the protective order. Judge Stalder stated on the record that she reviewed the "docket sheet notes," which provided that "Ms. Tretsven [was] supposed to draft an order with the assistance of the amicus" following the hearing before Judge Hellums that had occurred in February. Stalder stated that she had not received an order and "didn't hear from anybody," so she "asked that this be set in order to figure out what had happened."

The hearing was continued and reconvened on June 13, 2022, with Judge Stalder presiding. Leanard's counsel complained that the proposed order submitted

6

by Tretsven did not comport with Judge Hellums's purported rendition made on the record following the protective order hearing. Judge Stalder then stated that the case "has been going on since February" and that she "want[ed] an order in the Court's file today that reflects the rendition." She concluded, "If nobody knows what that rendition is, then it's gonna be on the respondent to get a copy of that rendition since you were the ones that don't—say that it's not comporting to the rendition and then that will be drafted according to the rendition."

Counsel for Leanard pointed out several concerns regarding the proposed order:

> [T]he dates of appearances are wrong. The appearances for Mr. Leanard, he was represented. Ms. Taylor [the amicus attorney appointed for the children]—Ms. Taylor's function in the litigation is wrong. The findings are wrong. The, the awards of attorney fees and costs are wrong. The—in some of these requirements, as far as the battering intervention, you know, she chose arbitrary deadlines. The supervision is wrong. I mean the whole thing is wrong.

Judge Stalder also noted that the deadlines for the batterer intervention program were wrong. Judge Stalder then stated, "Ms. Tretsven, I'm going to get an attorney from the public defender's office, Ms. Ashworth, to assist you in getting the order corrected."

Following this hearing, the clerk's record contains an email sent from personnel in Judge Stalder's court to Ashworth. The email included in the record is

not signed and does not state whether the rulings were from Judge Hellums or from Judge Stalder. The email stated:

> The Court with its own discretion has the power to change any portion of an Order within 30 days of the date the Order [is] signed.
>
> No Order has been signed in this case therefore there is currently no deadline for the Court to lose the power to change the Order. Having reviewed the case, the Court makes additional orders and changes some portions of the prior rendition[.]

The new orders or changes included findings "that the conduct of the Respondent [Leanard] could constitute a felony if charged and therefore this PO be granted for longer than the 2 yrs period"; that the Court was granting the protective order "for the children for 4 years each and . . . for the applicant mom [Tretsven] for until children are 18"; that communication between Leanard and Tretsven be limited to "communication regarding the children's physical health and safety, emotional wellbeing, and educational issues and during any pick up and drop [off] of the children"; and that any communication between Leanard and Tretsven be through "appclose." On June 29, 2022, Judge Stalder signed the final protection order containing the above provisions.

**Void Order**

In his first issue, Leanard argues that the trial court's order is void because Judge Stalder signed it without having heard any part of the evidence related to the protective order. We agree.

8

"The rules of practice and procedure in civil district court allow judges to exchange courts and transfer cases from one court to another." *Malone v. PLH Grp., Inc.*, 570 S.W.3d 292, 294–95 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (quoting *Masa Custom Homes, LLC v. Shahin*, 547 S.W.3d 332, 335 (Tex. App.—Dallas 2018, no pet.)); *see* TEX. R. CIV. P. 330(e) (permitting exchange and transfer of cases and other proceedings from one court to another under certain circumstances). The rules also permit one judge to hear a part of a case and determine some issues while another judge completes the case. *Malone*, 570 S.W.3d at 295; *see* TEX. R. CIV. P. 18, 330(g); *see also Hull v. S. Coast Catamarans, L.P.*, 365 S.W.3d 35, 41 (Tex. App.—Houston [1st Dist.] 2011, pet. denied) (stating that more than one judge may exercise authority over single case).

"These rules have been construed broadly to allow cases to proceed through the courts as expeditiously as possible." *Shahin*, 547 S.W.3d at 335–36. This Court has recognized that a judge has authority to sign a final judgment based on a jury verdict even when that judge did not preside at trial because the judge did not have to determine any facts before entering judgment. *See Hot–Hed, Inc. v. Safehouse Habitats (Scotland), Ltd.*, 333 S.W.3d 719, 734 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (holding that award of attorney's fees in final judgment was proper even though judge who signed final judgment did not preside at trial because trial was to jury, and trial court did not have to determine any facts before

entering judgment); *Enax v. Noack*, 12 S.W.3d 609, 614 (Tex. App.—Houston [1st Dist.] 2000, no pet.) (holding that district court to which case had been transferred could enter final judgment even though it did not hear any evidence because jury reached verdict in case before it was transferred); *see also Shahin*, 547 S.W.3d at 336 (recognizing that judge may make substantive legal decision despite not presiding over some or all of trial when decision does not require judge to find facts based on evidence she has not heard); *Hull*, 365 S.W.3d at 42–43 (concluding that, despite fact that visiting judge presided over trial, it was proper for district judge to rule on motion for new trial on issue about which she had heard argument and evidence and that pertained to enforcement of her prior order).

"Similarly, a judge who did not preside over a bench trial may sign the final written judgment in the case so long as the written judgment merely memorializes an earlier final judgment rendered by the judge who heard the evidence." *Shahin*, 547 S.W.3d at 336 (citing, e.g., *In re L.K.K.*, No. 11-07-00106-CV, 2008 WL 4173742, at *3 (Tex. App.—Eastland Sept. 11, 2008, pet. denied) (mem. op.)). The "common element in these cases is that the fact issues presented were determined solely by the trier of fact who heard the evidence." *Id.*

However, neither the rules nor case law permit one judge to preside over the entire bench trial and another judge, "who heard no evidence, to render a judgment based on disputed facts." *Malone*, 570 S.W.3d at 295 (citing *Shahin*, 547 S.W.3d at

10

335–36). This is so because, in a bench trial, the judge observes the witnesses' demeanor, and, "[d]rawing on these observations," weighs the evidence and "determines the facts from the disputed evidence." *Id.* "Another judge exercising a judicial role in the same court is not authorized to render judgment without hearing any of the evidence on which the judgment is based." *Id.* (citing *W.C. Banks, Inc. v. Team, Inc.*, 783 S.W.2d 783, 785–86 (Tex. App.—Houston [1st Dist.] 1990, no writ)). Courts that have addressed this issue have held the rules of civil procedure do not authorize a judge to render judgment following a bench trial unless that judge personally heard the evidence on which the judgment is based. *See Gathe v. Gathe*, 376 S.W.3d 308, 318–19 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *In re L.K.K.*, 2008 WL 4173742, at *3; *Fid. & Guar. Life Ins. Co. v. Pina*, 165 S.W.3d 416, 421 (Tex. App.—Corpus Christi–Edinburg 2005, no pet.); *see also W.C. Banks, Inc.*, 783 S.W.2d at 785–86 (holding, when all evidence was presented to one judge but another judge rendered judgment, that second judge lacked authority to render judgment and noting that Rule 330(g) "allows a judge to decide after hearing part of a case, but it does not allow a judge to rule after hearing none of it"); *Hull*, 365 S.W.3d at 41–42 (observing that judge "who heard none of case" is not authorized to render judgment).

Here, Judge Hellums, sitting as a visiting judge, heard all of the evidence related to Tretsven's application for a protective order. Judge Hellums made an

oral pronouncement of her ruling on the record at the end of the evidentiary hearing, but she never signed an order. It is undisputed that Judge Stalder did not hear any part of the evidence in this case. Judge Stalder attempted to resolve the case by requesting that the parties draft an order that comported with the pronouncements that Judge Hellums made on the record.[1] However, the record reflects that Judge Stalder later sent new findings and amended terms to the lawyer who drafted the judgment. These included the finding that Leanard's conduct would have constituted a felony and that entry of a protective for a period of longer than two years was appropriate under the facts of the case. Judge Stalder was not authorized to render an order with new findings or terms because she did not hear any portion of the evidence on which the findings and order were based. *See, e.g.*, *Malone*, 570 S.W.3d at 295.

The email sent from Judge Stalder's court personnel reflected that "the Court . . . reviewed the case" before making additional findings and rulings. This review, however, was not sufficient to authorize Judge Stalder to make findings

---

[1] Because the final protective order did not comport with Judge Hellums's findings and provisions as stated on the record, we need not consider whether her pronouncement constituted a rendition of judgment. *See, e.g.*, *Gamboa v. Gamboa*, 383 S.W.3d 263, 270 (Tex. App.—San Antonio 2012, no pet.) (holding that "[j]udgment is rendered when the decision is officially announced either orally in open court or by a memorandum filed with the clerk," and that, "[i]n order to be an official judgment, the trial court's oral pronouncement must indicate an intent to render a full, final, and complete judgment at that point in time"); *see also Escobar v. Escobar*, 711 S.W.2d 230, 232 (Tex. 1986) ("[W]hether the court pronounced judgment orally and the terms of the pronouncement are questions of fact.").

based on the disputed evidence presented at the hearing before Judge Hellums. The court in *Shahin* addressed and rejected a similar argument. In *Shahin*, the appellee argued that the successor judge "had access to the record and to transcripts of the relevant testimony," but the appellate court held that such a review was insufficient to support the trial court's judgment. 547 S.W.3d at 336–37. The *Shahin* court stated that it did not doubt that the judge who signed the judgment reviewed the record, and it believed that the successor judge "had only the best intentions when he took on the responsibility of bringing this case to a conclusion." *Id.* at 337. The *Shahin* court nevertheless held:

> [J]ust as the law imposes limitations on an appellate court in its review of a cold record, [the successor judge's] review of the record in these circumstances would be no different. *See, e.g.*, *In re Toyota Motor Sales, U.S.A., Inc.*, 407 S.W.3d 746, 763–64 (Tex. 2013) (orig. proceeding) (Lehrmann, J., concurring). Only the judge who presides over the bench trial can see and observe the witnesses' mannerisms, reactions, and demeanor. *See Isuani v. Manske-Sheffield Radiology Grp., P.A.*, 805 S.W.2d 602, 607 (Tex. App.—Beaumont 1991, writ denied). He alone can determine the impact of the evidence and weigh the success and force of impeachment by cross-examination through careful observation. *Id.* It is because of the essential differences between reading the record and presiding over the trial that courts have recognized the narrow, but essential exception to the otherwise relatively free exchange of benches provided for by the rules and the constitution: a judge who did not hear the evidence in a bench trial cannot thereafter read the trial record and then render judgment in the case. *See Hull*, 365 S.W.3d at 42; [*W.C. Banks, Inc.*], 783 S.W.2d at 786.

*Id.*

Because she did not receive evidence regarding the application for protective order, Judge Stalder lacked power to render the order that she signed on June 29, 2022. *See Malone*, 570 S.W.3d at 295; *Shahin*, 547 S.W.3d at 337–38. Judge Stalder lacked authority to adjudicate the case and thus lacked jurisdiction, making the order rendered void. *See Reiss v. Reiss*, 118 S.W.3d 439, 443 (Tex. 2003) (stating, "'Jurisdiction' refers to a court's authority to adjudicate a case," citing *Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 75 (Tex. 2000), and holding that judgment is void if court entering it lacks jurisdiction of parties or subject matter, or if court acts outside its capacity as a court); *Malone*, 570 S.W.3d at 295; *Shahin*, 547 S.W.3d at 338. Accordingly, we lack jurisdiction to address the merits of an appeal from the void order. *See Freedom Commc'ns, Inc. v. Coronado*, 372 S.W.3d 621, 623 (Tex. 2012) (stating that "appellate courts do not have jurisdiction to address the merits of appeals from void orders or judgments"); *Malone*, 570 S.W.3d at 295.

We sustain Leanard's first issue. The final order underlying this appeal is void, and we do not have jurisdiction to consider the merits.

## Conclusion

We vacate the trial court's order and dismiss the case.

Richard Hightower
Justice

Panel consists of Justices Kelly, Hightower, and Guerra.